UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LARRY COLLINS,                          )        Case No. 1:09CV2427
                                        )
            Petitioner,                 )        Judge Patricia A. Gaughan
                                        )
      vs.                               )        **REPORT AND RECOMMENDATION**
                                        )        **OF MAGISTRATE JUDGE**
FRANK SHEWALTER, WARDEN,                 )        (resolving Docket #1 and #3)
                                        )
            Respondent.                 )        Magistrate Judge James S. Gallas
                                        )

      Petitioner Larry Collins was indicted for two counts of felonious assault, two counts of

aggravated robbery, one count of grand theft of a motor vehicle, one count of receiving stolen

property, one count of kidnapping, and one count of attempted rape in the Cuyahoga County Court

of Common Pleas. (Docket #10 at 5, Exhibit 1). Mr. Collins pled not guilty. (*Id.*; Exhibit 2).  At the

conclusion of a trial, a jury found Mr. Collins "guilty of receiving stolen property and not guilty of

aggravated robbery, grand theft of a motor vehicle, kidnapping, and attempted rape." (*Id.*; Exhibits

7, 8). The jury was unable to reach a verdict as to the two counts of felonious assault; the judge

declared a mistrial on these two counts and retrial was scheduled. *Id.*   At the conclusion of the

retrial,  a jury convicted Mr. Collins on both counts of felonious assault. (*Id.*; Exhibit 19).  Mr.

Collins was sentenced to eight years imprisonment for felonious assault to run concurrent to an 18

month sentence for the receiving stolen property conviction.  (*Id.*; Exhibit 19).

      On November 20, 2007, Mr. Collins appealed his conviction to the Ohio Eighth District

Court of Appeals. (*Id.,* Exhibit 20).  On appeal, Mr. Collins argued, through counsel, the following

errors: (1) "the trial court erred when it admitted unreliable scientific evidence"; (2) "the trial court

2

erred when it did not declare a mistrial for the prosecution's failures to disclose its case to the defense"; (3) "the trial court erred when it admitted the hearsay testimony of Det. Duke"; (4) the trial court erred with it admitted pretrial and trial identification testimony because the pretrial identification procedures used were unduly suggestive and unreliable"; and (5) " the trial court deprived Defendant-Appellant of his Fourteenth Amendment Due Process right based upon the cumulative effect of its errors in assignments of errors numbers one through four." (*Id.*, Exhibit 23 at 1).  On January 14, 2008, Mr. Collins filed a supplemental brief, pro se, alleging four additional errors: (1) "the trial court abused its discretion in denying appellant expert assistance at state expense, thereby denying appellant due process"; (2) "the trial court denied appellant due process in denying appellant an independent analysis of the state['s DNA evidence"; (3) Appellant was denied his constitutional right to a fair trial because of the cummulative [sic] effect of the trial court['s ruling"; and (4) the trial court committed reersable [sic] error in its denying Appellant his constitutional right to cross-examine witinesses [sic] against him pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004)." (Emphasis added) (*Id.*, Exhibit 22).  Mr. Collins's convictions and sentence were affirmed by the Ohio Eighth District Court of Appeals on May 15, 2008. (*Id.*, Exhibit 24).

Mr. Collins, pro se, then appealed his case to the Supreme Court of Ohio alleging six propositions of law: (1) "[t]he asymmetrical application of evidentiary standards by the trial and appellate courts are unconstitutional"; (2) "[t]he trial court erred in not declaring a mistrial when the prosecution witheld [sic] exculpotary [sic] evidence"; (3) Appellant was denied the right to confront witnesses against his [sic]"; (4) Appellant was denied due process by the introduction of and unduly suggestive photo identification and testimony"; (5) the trial court abused its discretion in denying

3

appellant expert assistance at state expense"; (6) Appellant was denied effective assistance of appellate counsel in his direct appeal." (*Id.*; Exhibit 26).  The Supreme Court of Ohio denied leave on December 3, 2008, and dismissed the case.  (*Id.*; Exhibit 27).

On July 14, 2008, Mr. Collins, pro se, filed a delayed application to reopen his appeal under Ohio App.R. 26(B). (*Id.*; Exhibit 28).  In his motion, Mr. Collins alleged two new errors: (1)he was "denied effective assistance of appellate counsel in counsels failure to file the complete record in this court"; and (2) his "conviction is the result of the prosecution's knowingly and intentionally using perjured testimony in violation of the Federal Constitution." (*Id.*; Exhibit 28).  On October 22, 2008, the Court of Appeals denied Mr. Collins's application. (*Id.*; Exhibit 29).

Mr. Collins, pro se, then appealed the October 22, 2008 decision to the Supreme Court of Ohio stating three propositions of law: (1) "[a]n appellant has a right to competent and effective assistance of appellate counsel on direct appeal. This is a constitutional gurarntee [sic] embioded [sic] in the Sixth Amendment of the United States Constitution"; (2) "[t]he application of res judicata in this case is unjust and in violation of the Sixth and Fourteenth Amendments of the United States Constitution"; and (3) Appellant[']s conviction is the result of the prosecution knowingly and intentinaly [sic] using false evidence and trstimony [sic] to obtain a tainted conviction in violation of the Federal Constitution." The Supreme Court declined to extend jurisdiction and dismissed Mr. Collins's appeal.

Mr. Collins, pro se, filed the instant petition on October 19, 2009, under 28 U.S.C. §2254, and presents eight grounds [1] for relief::

---

[1] Mr. Collins's petition listed ten ground for relief. However, on May 11, 2010, Mr. Collins moved to amend his petition to delete grounds one and six. (Docket #21).  The undersigned granted his motion.  The grounds are discussed below by their original numbers.

**Ground for Relief No. 2**: The trial court erred in not declaring a mistrial for the prosecution[]s failure to disclose its case to the defense. (*Id.* at 8).

**Ground for Relief No. 3**: The trial court erred by allowing hearsay testimony of Investigating Officer Vinson, and [v]ictim Debra McDonald in violation of Crawford v. Washington. (*Id.* at 9).

**Ground for Relief No. 4**: The trial court erred when it admitted the [i]dentification testimony of Melvin Brown and the photo array exhibit from which he identified petitioner at a pre[-]trial photo array. (*Id.* at 11).

**Ground for Relief No. 5**: The trial court abused its discretion when it denied petitioner an expert witness at state expense.  (*Id.* at 16).

**Ground for Relief No. 7**: Petitioner was denied effective assistance of counsel on direct appeal in violation of the United States Constitution. (*Id.* at 17).

**Ground for Relief No. 8**: Petitioner['s] conviction is the result of the prosecution['s] knowingly and [i]ntentionally using perjured testimony and false evidence to obtain a tainted conviction in violation of the Federal Constitution. *Id.*

**Ground for Relief No. 9**: Petitioner was denied effective assistance of counsel when counsel submitted four assignment[s] of error for review on an incomplete record. (*Id.* at 18).

**Ground for Relief No. 10**: The application of [r]es [j]udicata in denying petitioner['s] timely filed 26(B) re[-]opening is unjust and in violation of the petitioner's rights under the [S]ixth and [F]ourteenth Amendments of the United States [C]onstitution.  *Id.*

Respondent answered opposing the petition (Docket #10) and Mr. Collins filed a traverse.

(Docket #16).  Mr. Collins has also filed a motion for appointment of counsel (Docket #3).  **[2]**

---

[2] Mr. Collins also sent a letter to the undersigned, dated May 16, 2010, stating that he "may have another filing to submit and may miss my deadline" because of mail issues at the prison.  The letter also states that Mr. Collins did not meet the April 30, 2010 deadline to file his traverse for the same reasons and asks the undersigned to consider it nonetheless.  With regard to the latter, Mr. Collins timely filed a traverse on April 29, 2010 (Docket #16) and as such, it will be considered. As to the former, the undersigned and/or the Court will consider extensions of time for future filings if Mr. Collins files a motion describing the document he would like to file and the time he requires

5

## I.  *FACTUAL BACKGROUND*

The facts that formed the basis of the Mr. Collins's conviction were set forth in *State v. Collins,* 2008 WL 2058527, at ¶¶7-21 ("State Court Decision").

During the evening of January 14, 2005, the victim, Deborah McDonald, drank two or three beverages at Wolf's bar on Cedar Avenue. While it was dark, she attempted to leave the bar and enter her gray 1991 Ford Escort when she was attacked from behind. She explained she was struck on the side of her face and head and forced into her vehicle. The attacker confiscated her keys and drove from the bar.

The attacker transported the victim to a house at 2211 East 89th Street. No one else was present inside the messy and dimly lit home. Inside, the attacker demanded the victim's money, a $1.00 bill, and that she smoke crack with him. She complied with his demands. He then informed her that she was going to have sex with him. When she resisted, he began beating her. She explained that she was bruised, bleeding, her eyes were swollen shut and her head cut open. The victim testified that at one point, she wiped her face with a cloth. He further attempted to pull down her pants but then pulled them up and they left the house.

When the two left, the victim broke free from the attacker's hold, ran to a Cadillac nearby where an African-American sat in the driver's seat, and she screamed for help. After the driver did not respond, she ran down the street to Gene's store. There she received assistance.

Two days after the incident, police compiled a four person photo array. The victim was unable to identify appellant from the photo array. She explained that it was dark, she was distraught and her eyes were swelled shut and caked with blood. Furthermore, during her testimony, the victim freely admitted that she smoked marijuana earlier in the day, had a few drinks of alcohol at the bar prior to the attack and that the assailant forced her to smoke crack. She was cross-examined regarding these facts, as well as her criminal history, which included a prior drug conviction in which she spent a year in prison in 2003.

The driver of the Cadillac, Melvin Brown testified at the trial of this matter. He testified that on the evening of January 14, 2005, he knocked at the 2211 East 89th Street residence, which was the home of his friend, Toni Payne. An African-American male, he later identified as appellant, answered the door and informed him that Toni was not home. Appellant then shut the door. Perplexed, Brown returned to his vehicle, but remained parked in the driveway. He then

_____

to file it.

6

witnessed the victim run from the house, covered in blood, to his window. She yelled for help and then ran down the street.

Brown testified that, shortly thereafter, appellant exited the house and drove off in a gray subcompact vehicle. He drove in the opposite direction where the victim ran. Brown retrieved the license plate number of the vehicle, which was later identified as the victim's vehicle. After appellant left, Brown returned to the house, peered through the window and saw the home in disarray with blood on the floor and walls. He then called 911.

Detective John Vinson testified that, when he arrived at the Gene's store, the victim was bloody and distraught. Nevertheless, she was able to provide the police with a description of her vehicle and of the assailant. More specifically, she described the assailant as an African-American male, about 5' 9? in height, medium brown complexion, and wore a red jacket and skull cap. Additionally, she informed the police that he had taken her vehicle, which she described in detail.

In response, the police broadcasted over the radio the description of the assailant, as well as the victim's gray 1991 Ford Escort and its license plate number. Several hours later, Officer David Wagner of the Cleveland Police Department and his partner, Gary Heschler, passed an African-American driving a vehicle matching the description given by the victim. The police made a u-turn in an attempt to follow and the assailant sped away. By the time the police caught up to the vehicle, appellant exited the vehicle and fled. The police broadcasted over the radio the occurrence. Officer Wagner later identified appellant as the individual who drove the suspect vehicle and fled the police.

Detective Thomas Rauscher and his partner, Stephen Hvranik, heard the broadcast. They were near where the appellant fled and witnessed an African-American male running through yards. They exited their vehicle and chased after the male, later identified as appellant.

While chasing appellant, they witnessed him discard something. When Detective Rauscher stopped appellant, he noticed blood on his pants. Detective Rauscher and his partner also retrieved the object appellant discarded-the keys to the victim's vehicle. Consequently, appellant was arrested. During booking, the police noticed blood on appellant's sweater. As a result, the police confiscated his clothing for evidence.

At the 2211 East 89th Street residence where the attack occurred, police retrieved bloody boxer shorts, one knife with a black handle, one knife broken in two, the white handle was separated from the blade, the victim's earring, broken white glass, a ceramic mouse and a vase. Detective Amy Duke testified she noticed the walls in

7

the house were covered in blood, furniture was overturned, and broken glass was about.

Inside the victim's vehicle, police discovered a red jacket similar to the one the victim described her attacker as wearing. Inside the jacket, police found the victim's identification card, her cigarettes, a lighter and a skull cap.

The day after the incident, Melvin Brown returned to the 2211 East 89th Street residence to pick up his friend Toni. That same day, he provided the police with his name, information and the events of the preceding night. Sometime thereafter, although he cannot remember exactly when, Detective Duke showed him a photo array of four individuals and he positively identified appellant from the array as the individual who answered the door to the 2211 East 89th Street residence on January 14, 2005, and who drove away in the victim's vehicle while the victim ran to Gene's store bloody and yelling. Finally, he testified that he did not receive any consideration in a criminal case pending against him from the state for testifying in this matter.

At the trial, Stacy Violi, the forensic scientist in the serology DNA section of the BCI, testified that she conducted the DNA analysis of various items in this case. She explained that, on April 28, 2005, she examined for DNA evidence on appellant's sweater and pants, the boxer shorts discovered at the 2211 East 89th Street residence, and buccal swabs of the victim and appellant. She determined that there is a probability of one in over 611 trillion, 600 billion individuals that the victim's DNA was contained in the blood that was found upon appellant's sweater, pants, and boxer shorts. Additionally, she testified that she found appellant's semen upon the boxer shorts as well.

Violi further testified that on October 25, 2005, she received the red jacket, skull cap and the $1.00 bill discovered in the victim's vehicle. In her report, dated November 7, 2005, she concluded that there is a probability of one in over 611 trillion, 600 billion individuals, that the victim's DNA was found in the blood upon the red jacket. She further testified that the proportion of the population that cannot be excluded as possible contributors to the mixture of appellant's and the victim's DNA on the jacket collar and cuffs is one in 5,631 individuals. Additionally, the victim's blood was discovered on the money, as well DNA from appellant. The expected frequency of the occurrence of the DNA profile identified on the money is one in one quadrillion, 856 trillion individuals. Finally, Violi was unable to include or exclude appellant as the male DNA on the skull cap.

8

**II.**    ***LAW AND ANALYSIS***

 For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2), which  extends the  permissible range of federal review of state convictions follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

A district court has very restricted Congressionally-granted powers for review under 28 U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000)*; Bell v. Cone*, 535 U.S. 685 (2002). The habeas applicant must show either that the state decision was "contrary  to" or an "unreasonable application" of Supreme Court precedent.   The phrases "contrary to" and "unreasonable application" are not the same.   Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Williams,* 529 U.S. at 405-06; *Mitchell v. Esparza*, 540 U.S. 12, 15 (2003).  Under those circumstances the Supreme Court has held that the federal court on habeas review may grant the writ.  *Id.*  The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court

9

at the time of the relevant state court decision.  *Lockyer*, 538 U.S. at 71-72; *Williams*, 529 U.S. at 412; *Bell*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  This includes both the state court's refusal to extend and/or its unreasonable extension of existing legal principles from Supreme Court precedent to new contexts.  See *Williams*, 529 U.S. at 407.   The unreasonable application of Supreme Court precedent must, however,  be "objectively" unreasonable.  *Id.* at 409; *Wiggins,* 539 U.S. at 520-21.  When the state court has rendered a decision, the federal reviewing court  may not grant the writ in its "independent review of the legal question."  *Lockyer*, 538 U.S. at 75.  When there has been an "unreasonable application" of clearly established federal law, then no deference is due to the state decision and the federal court is free to resolve the claim independently.

### A.      Ground For Relief No. 2.

In his second ground for relief, Mr. Collins asserts that "the trial court erred in not declaring a mistrial[.]" (Docket #1 at 7).  Mr. Collins asserts that he should have been granted a mistrial because the prosecution failed to disclose but had  "knowledge of" two knives, "a beer can found at the crime scene, *** the police report, *** the victim[']s statement, *** DNA data, *** January 23rd 2007 pre[-]trial transcript[]", and Melvin Brown's plea deal. (*Id.* at Addendum page 1).

10

Respondent argues that with regard to all but two of the items (the victim's statement and DNA data), Mr. Collins's claim is procedurally defaulted because these items were not raised as a factual basis for this claim in state court.  (Docket #10 at 21).

"A petitioner seeking a writ of habeas corpus must meet certain procedural requirements to permit review of his habeas claims by a federal court." *Murphy v. Ohio*, 552 F.3d 485, 501 (6th Cir. 2009), citing *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 431 (6th Cir. 2006).  "A federal court will not review claims that were not entertained by the state court due to either the petitioner's failure to raise those claims in the state courts while state remedies were available or the petitioner's failure to comply with a state procedural rule, thereby preventing the state courts from reaching the merits of the claims." (Emphasis added). *Murphy*, 552 F.3d at 501, citing *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  In order to satisfy the exhaustion requirement, the petitioner must present the claim "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681, *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir.1984).

To "fairly present" a federal constitutional claim to a state court, a petitioner must give the highest court in the state a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  "A petitioner can take four actions in its brief which are significant

11

to the determination as to whether a claim has been fairly presented: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), *quoting Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

If a petitioner has no remaining state remedies but has failed to present all claims to the highest state court in a federal constitutional context, then petitioner's state remedies are exhausted, but petitioner has procedurally defaulted the claims. *See Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir.1996); *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir.1995).

 "[A] petitioner can overcome the procedural default, [however], by either 'demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008), *quoting Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "'Cause' for default requires a showing that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Jells*, 538 F.3d at 488, *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). "'Prejudice' requires a showing that the errors at trial 'worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Jells*, 538 F.3d at 488, *quoting United States v. Frady*, 456 U.S. 152, 170 (1982). "Additionally, under the miscarriage-of-justice exception, the Court may consider an otherwise defaulted claim if it concludes that the petitioner has shown that the 'constitutional violation has probably resulted in the conviction of one who is actually

12

innocent.'" *Jells*, 538 F.3d at 489, *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995), *quoting Murray*, 477 U.S. at 496.

On appeal to the Ohio Eighth District Court of Appeals, Mr. Collins alleged that the trial court should have declared a mistrial due to the prosecution's "discovery violations." (Docket #10, Exhibit 20 at 17). Specifically, Mr. Collins argued that: (1) the prosecution failed to timely send DNA data (the BCI file) to defense expert; (2) failed to disclose the fact "that the victim made a written statement to police"; and (3) failed to disclose the police report that contained the victim's oral statement, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*Id.* at 17-22). On appeal to the Ohio Supreme Court, Mr. Collins alleged that the trial court should have declared a mistrial due to the prosecution's failure to disclose the same three items. Mr. Collins's claims on habeas corpus related to the two knives, a beer can found at the crime scene, the January 23rd 2007 pre-trial transcript, and Melvin Brown's plea deal were arguments never made to the highest state court.

In his traverse, Mr. Collins asserts that he "did in fact present the State Court the opportunity to address this issue," in his Application for Delayed Reopening filed in the Ohio Eighth District Court of Appeals. (Docket #16 at 18, citing Docket #10, Exhibit 28). However, Mr. Collins's application, which asserts ineffective assistance of appellate counsel for "submitt[ing] an incomplete record" was denied based on the doctrine of res judicata. The State Court explained that Mr. Collins was given the opportunity to file a supplemental pro se brief and failed to raise any issues related to appellate counsel and/or trial counsel's failure to submit a complete record. (Docket #10, Exhibit 29 at 1). Thus, the State Court relied upon a state rule of procedure to support a conviction and as such, Mr. Collins has forfeited the right to federal habeas corpus review of these claims. *Meeks v. Bergen*, 749 F.2d 322, 325, *citing Wainright v. Sykes*, 433 U.S. 72 (1977). Moreover, Mr. Collins's

13

application does not clearly articulate, beyond the police report (which included the victim's statement) and DNA data, which specific items he believes should have been part of the record and grounds for a mistrial.

Accordingly, Mr. Collins has failed to exhaust his state remedies and because no state procedures for relief remain available to him for these factual bases for this ground, he has procedurally defaulted. *See, Simpson* and *Hannah*, *supra. See also O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999)(considering "[w]hether a petitioner who fails to present his claims in a petition for discretionary review to a state court of last resort has properly presented his claims to the state courts and concluding that because the answer is 'no,' the petitioner has procedurally defaulted his claims."); *Teague v. Lane*, 489 U.S. 288, 297-99 (1989) (stating that a 14th Amendment equal protection claim is forfeited following exhaustion of state remedies and failure to raise claim to state courts).

Mr. Collins does not attempt to demonstrate cause and prejudice or actual innocence. Accordingly, it is recommended that these bases for Mr. Collins's second ground for relief be dismissed due to procedural default.

As to the police report/victim's statement, it is true that, "after the victim was excused from the witness stand, the prosecution discovered that she had signed a witness statement form during an interview with police." (Docket #10 at 25, *citing* Transcript Volume II at 369). Because it contained inconsistencies from the victim's testimony, "the trial court re-called the victim to the stand and permitted the defense to re-cross examine her regarding the inconsistencies in her statement and her trial testimony." (State Court Decision at ¶38.)  The State Appellate Court found that such action by the trial court was "within its purview under Crim.R.16(E)(3) and was sufficient

14

under the circumstances to ensure a fair trial." *Id., citing State v. Wickline*, 50 Ohio St.3d 114

(1990)(holding that the trial court's remedy of ordering a witness to return to the stand for re-cross

examination to correct the prosecution's failure to produce the witnesses statement complied with

Crim.R. 16(E)(3)).  On appeal, [3] Mr. Collins argued that the trial court should have stricken the

victim's statement.  (State Court Opinion at ¶34).   However, Mr. Collins has failed to cite any

authority demonstrating that the means by which the trial court remedied any violation by the

prosecution of Crim.R. 16 violated clearly established federal law.  Moreover, Mr. Collins cross-

examined the victim using the statement at issue and therefore was not unduly prejudiced.

As to the "DNA data," again Mr. Collins did not make a specific argument in his petition.

On appeal, Mr. Collins argued that the prosecution failed to provide its BCI data to defense expert,

Dr. Krane until late in the trial. [4] (State Court Opinion at ¶39).  The State Court determined that such

denial did not violate Mr. Collins's "due process rights because the evidence was immaterial." *Id.*

At issue before the State Court were a red jacket, skull cap, and $1.00 bill, belonging to Mr. Collins,

that a forensic scientist, on behalf of the prosecution, testified contained the victim's blood DNA.

(*Id.* at ¶¶18, 21).  The State Court determined that any alleged prosecutorial error in providing the

BCI data was not a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) because the evidence was

not material.  (*Id.* at ¶42).  The State Court noted that,  "evidence shall be found material 'only if

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of

the proceeding would have been different."  (*Id.* at ¶41).  Here, according to the State Court, even

---

[3] The Petition does not state with particularity what Mr. Collins is arguing vis-a-vis the victim's statement.  Presumably, his argument is the same that he made to the State Court.

[4] Ultimately, Dr. Krane's report regarding DNA was excluded from evidence as hearsay because Dr. Krane did not testify.

15

had "the defense been able to discredit the DNA evidence by cross-examining Stacy Viola armed with Dr. Krane's report[,] the outcome of the trial could have been the same as ample circumstantial evidence was presented establishing [Mr. Collins's] guilt." (*Id.* at ¶42). The State Court Opinion then described such circumstantial evidence. (*Id.* at ¶¶42-43).

Mr. Collins provides no support demonstrating that the State Court's decision was in violation of clearly established federal law. Moreover, Mr. Collins did not move for a mistrial based on the delay in receiving the DNA data nor did he allege before the Eighth District Court of Appeals that he had done so.

Based on the foregoing, Mr. Collins has failed to establish that the state decision vis-a-vis the victim's statement/police report and DNA data was "contrary to" or an unreasonable application of clearly established federal law.

### B. Ground For Relief No. 3

In his third ground for relief, Mr. Collins argues that the trial court erred when it allowed the hearsay testimony of Officer Vinson and the victim in violation of *Crawford v. Washington*, 541 U.S. 36, 59 (2004). [5] (Docket #1 at 8). Yet, in his supporting facts, he acknowledges that the trial court sustained a hearsay objection to Officer Vinson's testimony and later prohibited inquiry about oral statements of the victim that were contained in the police report. Moreover, the victim and the officer testified at trial thereby eliminating any possible violation of *Crawford*. *Crawford*, *supra* at 59, n.9. The State Court overruled this argument on appeal for the aforementioned reason.

---

[5] In *Crawford*, the U.S. Supreme Court addressed the issue of whether a criminal defendant's Sixth Amendment right, under the U.S. Constitution, to confront his or her accusers was violated when the defendant was not given an opportunity to cross-examine the accuser.

16

Based on the foregoing, Mr. Collins has failed to establish that the state decision vis-a-vis his third ground for relief was "contrary to" or an unreasonable application of clearly established federal law.

## C.     Ground for Relief No. 4

In his fourth ground for relief, Mr. Collins argues that the trial court erred when it admitted Melvin Brown's testimony identifying Mr. Collins and the photo array from which he identified Mr. Collins. (Docket #1 at 10). Mr. Collins maintains that the photo array was "unduly suggestive and unreliable." *Id.*

In considering this argument, the State Court stated:

> When a witness has been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. *** The defendant bears the initial burden of establishing that the photographic identification procedure was unnecessarily suggestive."

(State Court Decision at ¶64-65, *citing State v. Waddy*, 63 Ohio St.3d 424, 438 (1992); *State v. Willis*, 120 Ohio App.3d 320 (1997); and *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)). The State Court then discussed the identification procedure and determined that the photo identification of Mr. Collins by Mr. Brown was not unduly suggestive and that Mr. Collins had not met his initial burden. (State Court Decision at ¶¶65, 69-71).

Under Federal Law, the admissibility of identification evidence is governed by a similar two-step test. The defendant initially bears the burden of establishing that the identification procedure was impermissibly suggestive. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992); *Simmons v. United States*, 390 U.S. 377, 384 (1968). Only then will the court proceed to determine whether, under the totality of circumstances, the identification was nevertheless reliable. *Id; see also*

17

*Moore v. United States*, 1998 WL 537589 (6th Cir.1998) (holding in a §2255 petition, the petitioner did not show that a line-up was impermissibly suggestive and the district court properly rejected the claim without reaching the reliability question.).

"Suggestiveness generally depends 'upon whether the witness's attention was directed to a suspect because of police conduct.' 2-5 Crim. Con. Law § 5.05(2)(b) (2004). In considering this, federal courts look to the effects of the circumstances of the pretrial identification, not whether law enforcement officers intended to prejudice a petitioner. *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986). In examining whether the identification procedure was impermissibly suggestive, the 'primary evil to be avoided is a very substantial likelihood of irreparable misidentification.'" *Blakely v. Williams*, 2008 WL 5263699 at *4 (N.D. Ohio 2008)(Nugent, J.), *quoting Biggers*, 409 U.S. at 198, *citing Simmons v. United States*, 390 U.S. 377, 384 (1968).

Here, the State Court determined that it need not move on to the second step of the analysis because Mr. Collins had not established that the identification procedure was unduly suggestive. Mr. Brown "had ample opportunity to view [Mr. Collins when he] answered the door and spoke with Brown briefly." (State Court Decision at ¶69).  Brown also "saw [Mr. Collins] leave the house and drive away in victim's vehicle." *Id.*  Mr. Brown "was firm in his identification of [Mr. Collins] as the person he encountered at the" crime scene. *Id.*  The photo array presented to Mr. Brown contained a "four-person photo array" of men with "comparable facial hair and hair styles," from which "Brown immediately picked" Mr. Collins.  (*Id.* at ¶70).  Finally, the State Court noted that despite Mr. Collins argument to the contrary, there was nothing in the record that "Brown's identification of [Mr. Collins] occurred moments before his testimony at trial[.]" (*Id.* at ¶71).

18

Based on an independent review of the record, the State Court is correct that Mr. Collins has failed to show that the identification procedures were impermissibly suggestive thereby requiring it to consider the totality of the circumstances.  Accordingly, "no due process violation has occurred." *Hill*, 967 F.2d at 230, *quoting United States v. Causey*, 834 F.2d 1277, 1285 (6th Cir.1987).  Mr. Collins has failed to establish that the state decision vis-a-vis his fourth ground for relief was "contrary to" or an unreasonable application of clearly established federal law.

### D.    <u>Ground for Relief 5</u>.

In his fifth ground for relief, Mr. Collins argues the trial court erred when it denied him access to an expert witness at state expense.  (Docket #1 at 16).  Mr. Collins maintains that although the trial court granted his motion for such expert (Dr. Krane), ultimately the court determined that Dr. Krane  was not qualified to analyze the DNA data for which he was hired.  *Id.*   Mr. Collins states that this error was only aggravated by the fact that the trial court then "put a spending cap on petition for an expert witness," which precluded him from being able to pay Dr. Krane to appear at trial to testify.  *Id.*   As noted above, Dr. Krane's report was not admitted into evidence because of its hearsay nature.

The State Appellate Court noted that, "[w]hether to provide state funds to an indigent criminal defendant in order to obtain expert assistance is within the sound discretion of the trial [court]."  (State Court Decision at ¶80, *citing State v. Mason*, 82 Ohio St.3d 144, 150 (1998). Moreover, such funds only need be granted if a "defendant has made a particularized showing: (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." (*Id.* at ¶82, citing *Mason, supra*). Further, "due process does not 'require that an indigent defendant be provided all the assistance that

a wealthier counterpart might buy." (*Id.* at ¶83, quoting *Mason* at 149). "Rather, he or she is entitled only to the basic and integral tools necessary to ensure a fair trial." *Id.* The State Court determined that the trial court properly limited payment to Dr. Krane because Mr. Collins request for $10,000 was unreasonable given the fact that Dr. Krane did not conduct his own DNA analysis instead basing "his opinion on a review of the analysis conducted by BCI." (*Id.* at ¶84).

Mr. Collins has not cited nor is there any authority in either federal or state law that an indigent defendant is entitled to unlimited funds for an expert. Based on our review of the record, and the State Appellate Court's analysis thereof, Mr. Collins has failed to establish that the state decision vis-a-vis his fifth ground for relief was "contrary to" or an unreasonable application of clearly established federal law.

### E.     Grounds for Relief 7, 8, 9.

In his seventh, eighth, ninth, and tenth grounds for relief, Mr. Collins asserts that he was: (1) denied the effective assistance of appellate counsel generally and for failure of counsel to submit a complete record on appeal; and (2) was convicted as a result of the prosecution's knowing use of perjured testimony and false evidence. (Docket #1 at 17-18). Respondent argues that because these grounds were never properly presented to the state court for a merits review and, therefore, these grounds are procedurally defaulted.

As set forth in our discussion of Mr. Collins's second ground for relief, Mr. Collins's ineffective assistance of appellate counsel grounds are procedurally defaulted because of the State Court's denial of Mr. Collins's Application for Delayed Reopening (26)(b) based on the doctrine of res judicata. As noted by the State Court, " a claim of ineffective assistance of appellate counsel may be barred from further review, by the doctrine of res judicata" when, as here, Mr. Collins was

20

given the opportunity to file a supplemental pro se brief and failed to raise any issues related to appellate counsel and/or trial counsel's failure to submit a complete record. (Docket #10, Exhibit 29 at 1-2). Because the State Court relied upon a state rule of procedure to support a conviction, Mr. Collins has forfeited the right to federal habeas corpus review of these grounds. *Meeks*, 749 F.2d at 325, *citing Wainright*, 433 U.S. 72.

Similarly, Mr. Collins only raised his claim regarding the prosecution's use of perjured testimony and/or false evidence in his Motion for Reopening. Again, Mr. Collins could have raised this issue on direct appeal either through counsel or in the supplemental brief he filed pro se. This claim was, therefore, barred by the State Court on res judicata grounds and is procedurally defaulted here.

Accordingly, it is the recommended that Mr. Collins's seventh, eighth, and ninth grounds for relief be dismissed due to procedural default.

### F.      Ground for Relief 10.

In his tenth ground for relief, Mr. Collins asserts that his Sixth and Fourteenth Amendment rights were violated by the Eighth District Court of Appeals' application of the doctrine of res judicata to deny his application for reopening of his appeal because he was denied effective assistance of counsel in his direct appeal. [6]   Such a claim is not cognizable on habeas corpus because  "[e]rrors arising during the course of state post-conviction proceedings are not amenable to federal habeas relief" as they are collateral matters. *Mapson v. Russell*, 869 F.2d 1491 (6th Cir. 1989), *citing Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir.1986)(defining "collateral matters" as

---

[6]As noted above, the appellate court determined that Mr. Collins could have raised his issues related to the effective assistance of counsel in the supplemental appellate brief that he filed pro se and, thus, such claims were barred based on the doctrine of res judicata . (Docket #10, Exhibit 29 at 1-2)

"claims that do not address the underlying state conviction giving rise to the prisoner's incarceration[.]")  "Because a Rule 26(B) application is a collateral proceeding, allegations of deficiency in this process are not cognizable on federal habeas corpus review." *Adkins v. Konteh*, 2007 WL 461292 at *4 (N.D. Ohio)(Zouhary, J.).  *See also, Matthews v. Sheets*, 2010 WL 537002 at *26 (S.D. Ohio)(Beckwith, J.)(holding that "[t]o the extent petitioner also argues the Ohio Court of Appeals erroneously denied his Rule 26(B) motion to reopen his direct appeal, *** this claim is not cognizable on federal habeas corpus review because a Rule 26(B) motion challenges the correctness of a state post-conviction proceeding and not the conviction itself.").  Moreover, it has been determined that there is no right to counsel for Rule 26(B) motions because post-conviction proceedings are civil in nature.  *Kirby*, 794 F.2d at 246.  Thus, there is no violation of a constitutional right for ineffective assistance of counsel in this setting, which could warrant Mr. Collins habeas relief.  *Id.*; *Mapson v. Russell*, 869 F.2d 1491 (6th Cir. 1989).  Mr. Collins's tenth ground for relief is not cognizable in habeas corpus.

### G.    Appointment of Counsel

Regarding Mr. Collins's motion for appointment of counsel, Mr. Collins fails to provide a reason for his request.   The Court has reviewed Mr. Collins's petition and determined that his ground for relief are not sufficiently complex to warrant an evidentiary hearing or the appointment of counsel.  *See Douglas v. Maxwell*, 357 F.2d 320, 321 (6th Cir. 1966); 18 U.S.C. 3006A(a)(2); *Shepherd v. Ohio*, 2007 WL 1431898 (N.D. Ohio), *citing Hodge v. Police Officers*, 802 F.2d 58,61 (2d Cir. 1986).

22

**III.**     ***CONCLUSION AND RECOMMENDATION***

Following review of the arguments raised in the petition and applicable law, petitioner has

not demonstrated that he was in custody pursuant to state court judgment that resulted from a

decision that  involved in an "unreasonable application" of federal law as determined by the

Supreme Court of the United States.  See 28 U.S.C. §2254(d)(1).  Further, there has been no

demonstrated need for an evidentiary hearing and the petition for habeas corpus relief under 28

U.S.C. §2254 (Docket #1) should be denied and dismissed.  It is further recommended that

petitioner's  motion for appointment of counsel (Docket #3) be denied.

/s/James S. Gallas

United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within

fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*,

638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: July 7, 2010